UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ALAN R. MCGLADE,

                              Plaintiff,

                    -against-

**COMPLAINT**

MMA GLOBAL HOLDINGS, CORP.,
FLX MEDIA, INC., EAGLE FC, INC., MMAx LLC,
ELIOT TAWIL, AKHMED G. BILALOV, and MAXIM
V. FINSKIY,

                              Defendants.
------------------------------------------------------------------------x

       Plaintiff Alan R. McGlade ("Plaintiff"), by and through his counsel, William K. Li Law, PLLC, for his Complaint against Defendants MMA Global Holdings, Corp. ("Defendant MMA Global"), FLX Media, Inc. ("Defendant FLX Media"), Eagle FC, Inc. ("Defendant Eagle FC"), MMAx, LLC ("Defendant MMAx") (collectively "Corporate Defendants"), Eliot Tawil ("Defendant Tawil"), Akhmed G. Bilalov ("Defendant Bilalov") and Maxim V. Finskiy ("Defendant Finskiy") (collectively "Individual Defendants") (altogether "Defendants") alleges as follows:

## INTRODUCTION

       1.     This action is brought to recover unpaid wages and other compensations owed to Plaintiff.

       2.     Plaintiff also brings this action on the basis of retaliatory termination after complaining about unpaid wages on behalf himself and other employees and for complaining about other unlawful conducts.

       3.     Plaintiff as result is also entitled to liquidated damages, attorneys' fees, costs, emotional damages, and injunctive and declaratory relief against Defendants.

## NATURE OF THE ACTION

4. Plaintiff brings this action pursuant to violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 190 *et seq.*, breach of contract, and NYLL § 740.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, this Court has jurisdiction over Plaintiff's federal claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), as Defendants conduct business in this district to a sufficient degree to be considered residents of this district under 28 U.S.C. § 1391(d).

7. This Court furthermore has jurisdiction over this matter as a result of the parties having agreed to be governed by New York law for disputes relating to the Plaintiff's claims in this matter.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Declaratory and injunctive relief is sought under 28 U.S.C. § 2001 et seq.

## CONDITIONS PRECEDENT

9. Plaintiff has satisfied his pre-filing requisite in accordance with NYLL § 215(2)(b) by providing notice to the New York Attorney General's Office for his retaliation claim pursuant to NYLL § 215.

## **THE PARTIES**

10. Plaintiff was initially hired by the Corporate Defendants' predecessor companies (as will be further explained *infra*) as their Chief Executive Officer on or about March 1, 2020.

11. Plaintiff was the Chief Executive Officer and Chairman of the Board of Defendant FLX Media at time of his unlawful termination on or about February 3, 2022.

12. Plaintiff was furthermore the Chief Operating Officer of Defendant Eagle FC at the time of his unlawful termination on or about February 3, 2022.

13. Plaintiff was also a Director on the Board of Defendant MMA Global.

14. Plaintiff has a 5.5% ownership of Defendant MMA Global.

15. Plaintiff is someone with a successful track record of starting and building innovative media companies since the early 1990s.

16. Corporate Defendants are an "enterprise engaged in interstate commerce" within the meaning of the FLSA. Corporate Defendants have: (1) employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or services that have been moved in or produced for commerce by any person and (2) upon information an annual gross revenue in excess of $500,000 in 2022.

17. All of the Corporate Defendants are interconnected entities with intermingled owners, employees, business purposes and financial resources sufficient to have enterprise liability for the purposes of FLSA and NYLL.

18. The purposes of Corporate Defendants are to stage, produce and promote Mixed Martial Arts ("MMA") events for live and at-home audience via streaming.

19. Defendant MMA Global is a Delaware corporation with its principal office in 500

5th Avenue, 54th Floor, New York, NY 10110.

20. Defendant MMA Global is the parent holding company of Defendants FLX Media and Eagle FC.

21. Defendant MMA Global wholly owns Defendants FLX Media and Eagle FC.

22. Defendant MMA Global is responsible for raising investment capital, funding the expenses of Defendants FLX Media and Eagle FC and providing oversight through its Board of Directors.

23. As the parent holding company, Defendant MMA Global receives all revenues and profits from Defendants FLX Media and Eagle FC.

24. Defendant FLX Media is a Delaware corporation with its principal office in 500 5th Avenue, 54th Floor, New York, NY 10110.

25. Defendant FLX Media is the operating company responsible for operating the FLXcast Arena, producing the MMA events, and distributing MMA the events through streaming.

26. Defendant Eagle FC is a Delaware Corporation with its principal office in 500 5th Avenue, 54th Floor, New York, NY 10110.

27. Defendant Eagle FC is the operating company responsible for promoting MMA events, signing MMA fighters and staging MMA competitions.

28. Defendant MMAx LLC is a Delaware limited liability company with its principal office in 500 5th Avenue, 54th Floor, New York, NY 10110.

29. Defendant MMAx is owned exclusively by the Individual Defendants only.

30. Upon information, the purpose of Defendants MMAx is to formally memorialize the partnership between the Individual Defendants as owners of Defendant MMA Global.

31. As of November 3, 2021, Defendant MMAx owned 2,360,000 of Defendant MMA

Global's common stock or 59% of the outstanding voting securities.

32. As a result, Defendant MMAx is really an alter ego of the Individual Defendants.

33. Each of the Corporate Defendants is a covered employer within the meaning of the FLSA and the NYLL and, at all times relevant, employed Plaintiff.

34. At all relevant times, each of the Corporate Defendants has maintained control, oversight, and direction over Plaintiff.

35. Defendant Tawil is the current Chairman and Chief Executive Officer of Defendant MMA Global.

36. Defendant Tawil was, and continues to be, at all relevant times a major shareholder in each of the Corporate Defendants.

37. Defendant Tawil at all relevant times exercised sufficient control over Plaintiff's employment under the FLSA and NYLL, including the authority to hire and fire, pay wages or withhold wages, assign work, supervise, maintain payroll records, and at all times material herein established and exercised authority regarding the pay practices at Corporate Defendants. As such, Defendant Tawil has personal liability in accordance with the FLSA and Article 6 of NYLL.

38. Defendant Tawil was, and continues to be, at all relevant times a resident of Kings County, New York.

39. Defendant Bilalov was, and continues to be, at all relevant times a major shareholder in each of the Corporate Defendants.

40. Although Defendant Bilalov does not have any formal title or role in the Corporate Defendants, he however at all relevant times exercised sufficient control over Plaintiff's employment under the FLSA and NYLL, including the authority to hire and fire, pay wages or withhold wages, assign work, supervise, maintain payroll records, and at all times material herein

established and exercised authority regarding the pay practices at Corporate Defendants. As such, Defendant Bilalov has personal liability in accordance with the FLSA and Article 6 of NYLL.

41. Defendant Bilalov furthermore was, and continues to be, during all relevant times involved with the Corporate Defendants' day-to-day operations and decision makings.

42. Defendant Bilalov was, and continues to be, at all relevant times a resident of New York County, New York.

43. Defendant Finskiy was, and continues to be, at all relevant times a major shareholder in each of the Corporate Defendants.

44. Although Defendant Finskiy's formal title during the relevant time period was, and continues to be, Advisor to the Board of Directors of the Corporate Defendants, he however at all relevant times exercised sufficient control over Plaintiff's employment under the FLSA and NYLL, including the authority to hire and fire, pay wages or withhold wages, assign work, supervise employees, maintain payroll records, and at all times material herein established and exercised authority regarding the pay practices at Corporate Defendants. As such, Defendant Bilalov has personal liability in accordance with the FLSA and Article 6 of NYLL.

45. Defendant Finskiy furthermore has a personal office in the Corporate Defendants' Miami offices.

46. Defendant Finskiy furthermore was, and continues to be, during all relevant times involved with the Corporate Defendants' day-to-day operations and decision makings.

47. Defendant Finskiy was, and continues to be, at all relevant times a resident of Miami-Dade County, Florida.

## FACTS

48. On or about March 1, 2020, Plaintiff was hired as the Chief Executive Officer of

Corporate Defendants.

49. Plaintiff entered into an "Executive Employment Agreement" ("Employment Agreement") with what used to be known as MMA Global TSL LLC and TSL Media Enterprises LLC.

50. MMA Global TSL LLC and TSL Media Enterprises LLC were the predecessor entities of Corporate Defendants.

51. MMA Global TSL LLC and TSL Media Enterprises LLC had their principal offices in 500 5th Avenue, 54th Floor, New York, NY 10110, the same address the Corporate Defendants.

52. The Employment Agreement, states in relevant part, that Corporate Defendants would pay Plaintiff a base salary of $300,000 per year ("Base Salary") and a bonus equal to 50% of Plaintiff's Base Salary based on certain performance criteria.

53. The Employment Agreement states, in relevant part, that Plaintiff is entitled to a 3% equity stake in what was then known as MMA Global TSL LLC (or its successor), 50% of which was automatically vested upon on March 1, 2020 with the remaining 50% to be vested over a 60 month vesting schedule.

54. The Employment Agreement states that if Plaintiff's employment was terminated without cause, Plaintiff would receive a severance payment equal to the lesser of fifty percent (50%) of Plaintiff's base salary at the time of the termination of his employment or one (1) year of the Base Salary.

55. The Employment Agreement furthermore states, in relevant part, that it is governed by New York State law.

56. Unfortunately, Defendants severely underpaid what was promised to Plaintiff.

57. There was a long stretch of time in which Defendants failed to pay Plaintiff any

Base Salary at all despite Plaintiff's hard work.

58. After the commencement of Plaintiff's employment, Plaintiff was only paid $25,000 on or about October 19, 2020 and then $20,000 on or about December 7, 2020.

59. Plaintiff was then not paid any Base Salary until October 1, 2021, retroactive to September 1, 2021, when Defendants began paying Plaintiff approximately $11,540 biweekly until his termination on February 3, 2022.

60. Defendants failed to even pay Plaintiff the minimum wage as a result of not paying him any salary for a total of more than a year's time.

61. Plaintiff was only paid a total of $171,750 in Base Salary during his employment when he should have been paid $575,000 for his approximate 23 months of employment.

62. In total, Plaintiff is owed $403,250 in unpaid Base Salary.

63. In addition to Plaintiff, other employees, including Corporate Defendants' Chief Legal Officer Robert Caldwell ("Mr. Caldwell"), and the then Chief Operating Officer Rizvan Magomedov[1] of MMA Global Group, Inc. were not paid a substantial amount of their wages, compensations and reimbursements.

64. Plaintiff made regular complaints, in writing and verbally, to each of the Individual Defendants, about the non-payment of his wages and compensations during his employment.

65. Plaintiff also made regular complaints to each of the Individual Defendants on behalf of other employees and staff members who were not paid their wages during his employment.

66. Plaintiff furthermore complained to each of the Individual Defendants about their failure to implement the proper corporate governance, misclassification of employees as

---

[1] He is the current Chief Executive Officer of Defendant Eagle FC.

independent contractors, and the Corporate Defendants' breach of their contractual obligations during his employment.

67. On or about May 22, 2020, Plaintiff became the Board of Director, retroactively effective March 1, 2020, of what was then known as MMA Global Group TSL LLC .

68. As a part of being the Board of Director, Plaintiff and Defendants entered into an agreement titled "Board of Directors Agreement" ("Board Agreement") on or about May 22, 2020.

69. The Board Agreement states, in relevant part, that Plaintiff was to receive $15,000 ("Board Fees") every three (3) months for his services.

70. The Board Agreement furthermore states, in relevant part, that Plaintiff would immediately receive an additional 2.5% equity stake in what was MMA Global Group TSL LLC (or its successor).

71. However, Defendants never paid Plaintiff any of his Board Fees. As a result, Defendants owe Plaintiff $115,000 in Board Fees.

72. On or about November 3, 2021, Plaintiff owned 180,000 shares (or 4.5%) of Defendant MMA Global when Defendants agreed, in writing, to effectively accelerate Plaintiff's vesting schedule so that he became fully vested with 220,000 shares (or 5.5%) of Defendant MMA Global.

73. Also on November 3, 2021, Plaintiff was also given the position of Chief Operating Officer of Defendant Eagle FC by Defendants.

74. Plaintiff reported to the Individual Defendants during his employment.

75. Plaintiff had regular correspondence with the Individual Defendants regarding his work.

76. Despite not being paid what he was promised, Plaintiff continued to work hard for

Defendants in helping the Corporate Defendants succeed.

77. Plaintiff went above and beyond his duties to get Corporate Defendants off the ground and succeed. By way of example, Plaintiff secured a leading production facility, managed the construction and completion of a studio arena (known as the FLXcast Arena) to host MMA events, established the online streaming platform (known as FLXcast), recruited and managed the necessary employees and contractors, and successfully launched Corporate Defendants' first MMA event (Eagle FC 44) on January 28, 2022.

78. Despite his hard work and success, Plaintiff was informed by Defendants Tawil and Finskiy that his employment was terminated without cause on February 3, 2022, mere days after the Defendants' first MMA event (Eagle FC 44) was held on January 28, 2022 in retaliation for his complaints of unpaid wages and other unlawful conducts.

79. Defendants have to date failed to pay Plaintiff $403,250 in Base Salary which is owed to him, Board Fees of $115,000, the $150,000 bonus which he has earned based on achieving what was expected of him in accordance with the Employment Agreement, and the $287,500 in severance payment owed to him in accordance with the Employment Agreement.

80. Defendants continue to enjoy the fruits of Plaintiff's labor as they held a second MMA event (Eagle FC 46) on March 11, 2022 and have most recently held their third event (Eagle FC 47) on May 20, 2022, both originating from the FLXcast Arena and streamed via FLXcast to a global audience.

81. On or about May 23, 2022, Corporate Defendants, communicated via their Chief Legal Officer, Mr. Caldwell, a threat to make a bankruptcy filing for the Corporate Defendants to try to dissuade Plaintiff from pursuing what is rightfully owed to him. This threat was made a mere three (3) days after the May 20, 2022 Eagle FC 47 MMA event referenced *infra*.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Failure to Pay Minimum Wage

82. Plaintiff realleges each and every allegation above as though set forth in full herein.

83. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

84. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

85. At all times relevant to this action, Defendants were engaged in commerce and the Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

86. Defendants violated the rights of Plaintiff by failing to pay him his minimum wage by virtue of failing to pay him any wages at all during the time periods stated in this Complaint.

87. Defendants' failure to pay Plaintiff his minimum wage was willful within the meaning of the FLSA. As a result, a three (3) year statute of limitation applies pursuant to 29, U.S.C. §§ 201 *et eq*.

88. Defendants are liable to Plaintiff for his unpaid wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and interest.

## SECOND CAUSE OF ACTION
### New York Labor Law – Failure to Pay Minimum Wage

89. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

90. Defendants have engaged in a widespread pattern and practice of violating the NYLL, as detailed in this Complaint.

91. Defendants violated the rights of Plaintiff by failing to pay him the applicable minimum wage by virtue of failing to pay him any wages at all during the time period stated in this Complaint in violation of Article 6 of NYLL.

92. Defendants' violation was willful and intentional.

93. Defendants are liable to Plaintiff for his unpaid wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Failure to Pay Base Salary**

94. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

95. Plaintiff and Defendants entered into an Employment Agreement on or about March 1, 2020 where Defendants agreed to pay Plaintiff a Base Salary.

96. Defendants have however failed to pay $403,250 of Plaintiff's Base Salary in violation of NYLL §193.

97. Defendants' violation was willful and intentional.

98. Defendants are therefore liable to Plaintiff for his unpaid wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Failure to Pay Earned and Vested Bonus**

99. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

100. Defendants failed to pay Plaintiff his earned and vested bonus of $150,000.

101. Earned and vested bonus is deemed to be wages under Article 6 of NYLL.

102. Defendants' violation was willful and intentional.

103. Defendants are therefore liable to Plaintiff for his unpaid wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, interest.

## FIFTH CAUSE OF ACTION
### Fair Labor Standards Act Section 215- Retaliation

104. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

105. Plaintiff has asserted his rights in seeking unpaid wages on behalf of himself and other employees.

106. As a result, Plaintiff has engaged in an activity protected by FLSA § 215.

107. Defendants retaliated against Plaintiff by terminating his employment on or about February 3, 2022.

108. Defendants are therefore liable to Plaintiff for lost wages, liquidated damages, reasonable attorneys' fees and costs, and emotional damages.

## SIXTH CAUSE OF ACTION
### New York Labor Law Section 215– Retaliation

109. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

110. Plaintiff has asserted his rights in seeking unpaid wages on behalf of himself and other employees.

111. As a result, Plaintiff has engaged in an activity protected by NYLL § 215.

112. Defendants retaliated against Plaintiff by terminating his employment on or about February 3, 2022.

113. Defendants are therefore liable to Plaintiff for lost wages, liquidated damages,

reasonable attorneys' fees and costs, and emotional damages.

114.   Plaintiff has satisfied his pre-filing requisite in accordance with NYLL § 215(2)(b) by providing notice to the New York Attorney General's Office.

### SEVENTH CAUSE OF ACTION
### New York Common Law Breach of Contract – Failure to Pay Severance

115.   Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

116.   As a part of Plaintiff's employment with Defendants, Plaintiff entered into a valid Employment Agreement dated on or around March 1, 2020 wherein Plaintiff agreed to perform work for Defendants and Defendants agreed, *inter alia*, pay Plaintiff a severance payment of $287,500 should Defendant terminate Plaintiff's employment without cause.

117.   Plaintiff satisfied the terms of the employment agreement by performing the required work for Defendants.

118.   Plaintiff's employment was terminated without cause on or about February 3, 2022.

119.   Defendants failed to satisfy the terms of the employment agreement and, in fact, breached the employment agreement by failing to pay Plaintiff the agreed upon $287,500 in severance payment.

### EIGHTH CAUSE OF ACTION
### New York Common Law Breach of Contract – Failure to Pay Board Fee

120.   Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

121.   Plaintiff and Defendants entered into the Board Agreement on or about May 22, 2020 in for Plaintiff to serve as a member of Defendants' board of directors.

122.   In consideration for Plaintiff's service as a member of the board of directors, the

Board Agreement agreed to pay Plaintiff $15,000 in Board Fees every three (3) months.

123.   Plaintiff satisfied the terms of the Board Agreement by performing his duties as a member of the board of directors.

124.   However, Defendants never paid Plaintiff any of his Board Fees in breach of the Board Agreement.

125.   As a result, Defendants owe Plaintiff $115,000 in Board Fees.

## NINTH CAUSE OF ACTION
### New York Labor Law Section 740 – Retaliation

126.   Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

127.   Plaintiff has engaged in activities protected by NYLL § 740 when he complained to Defendants about their failure to implement the proper corporate governance, misclassification of employees as independent contractors, and the Corporate Defendants' breach of their contractual obligations during employment.

128.   Defendants retaliated against Plaintiff by terminating his employment on or about February 3, 2022.

129.   Defendants' conduct was willful, malicious and wanton.

130.   Defendants are therefore liable to Plaintiff for lost wages, civil penalty of $10,000, punitive damages, and reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION
### Common Law Breach of Contract – Failure to Pay Base Salary (*Pled in the Alternative*)

131.   Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

132.   Plaintiff pleads these claims in the alternative, in the unlikely event that he is unable

to sustain the above First, Second and Third Causes of Action.

133. Plaintiff entered into an Employment Agreement with Defendants wherein Plaintiff agreed to perform work and Defendant agreed to pay Plaintiff, among other things, wages in the form of the Base Salary.

134. Plaintiff satisfied the terms of the Employment Agreement by continuing to go to work and providing his reasonable best efforts to services for Defendant even after learning about Defendants' breaches when Defendants refused to pay Plaintiff's Base Salary.

135. Defendants failed to satisfy the terms of the Employment Agreement and, in fact, breached the Employment Agreement by failing to pay Plaintiff $403,250 of his Base Salary.

## ELEVENTH CAUSE OF ACTION
**Common Law Breach of Contract – Unpaid Bonus (*Pled in the Alternative*)**

136. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

137. Plaintiff pleads these claims in the alternative, in the unlikely event that he is unable to sustain the above Fourth Cause of Action.

138. Plaintiff entered into an Employment Agreement with Defendants wherein Plaintiff agreed to perform work and Defendant agreed to pay Plaintiff, among other things, a bonus based on certain performance criteria.

139. Plaintiff satisfied the terms of the Employment Agreement by meeting the performance targets and as a result earned a bonus of $150,000.

140. Defendants failed to satisfy the terms of the Employment Agreement and, in fact, breached the Employment Agreement by failing to pay Plaintiff his $150,000 bonus.

## TWELFTH CAUSE OF ACTION
**Quantum Meruit (*Pled in the Alternative*)**

141. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

142. Plaintiff pleads this claim in the alternative, in the unlikely event that he is unable to sustain the above Causes of Action.

143. Plaintiff has performed numerous and valuable services at the request and for the benefit of Defendants. The reasonable value of those services for which Plaintiff has not been paid is far in excess of the compensation provided to Plaintiff by Defendants.

144. As a result, Defendants are liable to Plaintiff in an amount not yet determined but equal to the reasonable value of his services.

### THIRTEENTH CAUSE OF ACTION
**Unjust Enrichment (*Pled in the Alternative*)**

145. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

146. Plaintiff pleads this claim in the alternative, in the unlikely event that he is unable to sustain the above Causes of Action.

147. Plaintiff has performed a significant amount of work for Defendants for which he has not been paid.

148. Defendants' expectations that Plaintiff continue working despite being paid less than the compensation to which he was entitled to establishes Defendants' consent to pay Plaintiff for the value of the work he performed.

149. Defendants failed to pay Plaintiff for the value of the work and/or services he performed.

150. As a result of this failure to pay, Defendants were unjustly enriched for the work and services performed by Plaintiff. Defendants are therefore liable to Plaintiff in an amount not

yet determined but equal to the reasonable value of his services.

**WHEREFORE**, Plaintiff prays for the following relief:

A. An award of unpaid Base Salary in the amount of $403,250;

B. An award of unpaid Board Fees in the amount of $115,000;

C. An award of unpaid bonus payment in the amount of $150,000;

D. An award of unpaid severance payment in the amount of $287,500;

E. An award of lost wages (backpay and front pay);

F. An award of liquidated damages;

G. An award of punitive damages;

H. An award of emotional damages;

I. An award of attorneys' fees and costs;

J. An award of interests; and

K. Such other and further relief as the Court may deem and just.


Dated: New York, New York
       June 3, 2022

                                          WILLIAM K LI LAW, PLLC

                                          By: */s/ William Li*
                                          William Li
                                          200 Park Avenue, Suite1700
                                          New York, New York 10166
                                          T: (212) 380-8198
                                          wli@wlilaw.com
                                          *Counsel for Plaintiff*